

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 13, 2023.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| MRUCKER INDUSTRIES, INC. | § | |
| | § | |
| DEBTOR | § | BANKRUPTCY CASE NO. 23-10458 |

**ORDER CONFIRMING DEBTOR'S CONSENSUAL PLAN OF REORGANIZATION**
**(Docket No. 41)**

On December 11, 2023, the Court held a hearing (the "Confirmation Hearing") to consider confirmation of the Plan of Reorganization for a Small Business under Subchapter V of Chapter 11 (the "Plan")[1] filed herein by MRucker Industries, Inc. (the "Debtor") on September 27, 2023 (Docket No. 41). Present or making appearances at the hearing were counsel for the Debtor, the Debtor's representative, Marshall Rucker, the Subchapter V Trustee appointed in the case (hereinafter "Trustee"), counsel for certain creditors who have entered an appearance in the case, and the United States Trustee. The Court has reviewed the Plan, considered the documents admitted into evidence and the testimony of witnesses

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

present at the hearing, considered the statements and arguments of counsel, the docket of the Bankruptcy Case, and considered any other relevant factors affecting the case as set forth on the record. After hearing evidence, the Court finds as follows:

1. The Debtor filed this case on June 29, 2023, (the "Petition Date") and was qualified to be a debtor under 11 U.S.C. § 109. The Debtor was also qualified and elected to proceed as a small business debtor under Subchapter V of the Bankruptcy Code as that term is defined by 11 U.S.C. § 1182(1).

2. This Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed. Venue in the Western District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

3. Every person or entity required to receive notice of the hearing on confirmation of the Plan, a ballot for accepting or rejecting the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, received timely and adequate notice as required by the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 9014 and the Bankruptcy Code.

4. The contents of the Plan (with any modifications as set forth below) satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the Bankruptcy Code.

5. The Plan (with any modifications as set forth below) and the Debtor have satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1191(a). All classes of creditors voted to accept the Plan. The Plan nonetheless meets the requirements of 11 U.S.C. § 1191(b) and (c).

6. The Plan (with any modifications as set forth below) and the Debtor have satisfied

all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

7. No objections were filed objecting to confirmation of the Plan. Informal objections of the Texas Comptroller are resolved via the revisions set forth below.

8. The Plan provides that the Debtor will act as the payment administrator under the Plan. The Debtor, acting as payment administrator, will be to the benefit of the creditors, as it will reduce administrative expenses post-confirmation.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1. The Subchapter V Plan of Reorganization, which is set out as Exhibit "A" hereto is hereby CONFIRMED under 11 U.S.C. § 1191(a).

2. In accordance with Section 1142 of the United States Bankruptcy Code, the Debtor is authorized and directed, without the necessity of any further approval, to immediately take any action necessary or appropriate to implement, effectuate, and consummate the Plan and any transactions contemplated thereby or by this Order in accordance with their respective terms.

3. In accordance with 11 U.S.C. § 1194(b), the Debtor shall be the disbursing agent as to all creditor payments pursuant to the terms of the Chapter 11 Plan. The Sub Chapter V Trustee (the "Trustee") shall not be responsible for making any payments to creditors under the Plan.

4. In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5. The Debtor shall remit payment to the Subchapter V Trustee, no later than fifteen (15) days after entry of the Court's order regarding the Subchapter V Trustee's fee application.

6. The Court retains jurisdiction to consider professional fee applications and to enforce payment of fees assessed under 28 U.S.C. §586(e)(5).

7. If there is a default under this Order or the Plan, any party in interest may file a

motion with this Court requesting the appropriate relief on an expedited basis. The Debtor shall not oppose a request for expedited consideration.

8. The services of the Trustee shall terminate upon substantial consummation of the Plan, and the Debtor is to file and serve Notice of Substantial Consummation upon the Trustee, the U.S. Trustee, and all parties-in-interest within fourteen days following substantial consummation as required under 11 U.S.C. § 1183(c)(1) and (2).

9. The effective date of the Plan shall be January 10, 2024 ("Effective Date"), notwithstanding anything to the contrary in the Plan.

10. Within 3 days after the Effective Date of the Plan, counsel for the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. Counsel for the Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

11. On the Effective Date, Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtor will not be discharged of any debt or obligation: (i) imposed by this Plan; (ii) excepted from discharge under 11 U.S.C. § 523 as provided by 11 U.S.C. § 1141(d)(2) if the Debtor is an individual; and (iii) to the extent provided in 11 U.S.C. § 1141(d)(6) if the Debtor is a corporation.

12. Debtor will file any remaining Monthly Operating Reports for pre-confirmation periods that either have not been filed or become due after confirmation.

13. Article XV – Discharge Section of the Plan, third paragraph is deleted and void and not enforceable.

14. The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

15. This Confirmation Order is a final order and effective and enforceable immediately upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

16. Additional or Modified Creditor Treatment or Plan Terms:

   A. **3-2 Priority Claim of Chris Spene**. Chris Spene has a priority claim for unpaid commissions in the agreed upon amount of $30,188.68 (Claim No. 18-1). Debtor will pay the $30,188.68 amount over 60 monthly payments at 6.50% per annum. The payments will be $590.68 per month with the first monthly payment being due and payable thirty (30) days after the Effective Date of the Plan.

   B. **4-11 Wells Fargo Auto Finance (No Claim Filed))** claim in the amount of $21,863.35 is secured by a 2013 Ford F-150. Debtor proposes to pay the value of the claim of the vehicle for Wells Fargo Auto Finance in the amount of $15,120.00 at 8.50% over 5 years in 60 equal monthly payments at $310.21 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The deficiency claim amount of $6,743.35 shall be treated in Class 5 of the Plan.

   C. **4-12 Wells Fargo Auto Finance (No Claim Filed))** claim in the amount of $25,732.60is secured by a 2013 Ford F-350. Debtor proposes to pay the secured claim of the vehicle for Wells Fargo Auto Finance in the amount of $25,732.60 at 8.50% over 5 years in 60 equal monthly payments at $527.94 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

   D. **4-13 Wells Fargo Auto Finance (No Claim Filed))** claim in the amount of $27,361.64 is secured by a 2017 Ford T-250 Van. Debtor proposes to pay the secured claim of the vehicle for Wells Fargo Auto Finance in the amount of $27,361.64 at 8.50% over 5

years in 60 equal monthly payments at $561.37 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

E. **Kapitus Servicing, Inc. as agent of Kapitus LLC ("Kapitus") (Claim No. 2): Kapitus** filed a proof of claim in the secured amount of $149,716.27. The claim is allowed. Kapitus' claim is secured by Debtor's Receivables as defined the in a UCC Financing Statement recorded October 21, 2022 ("Financing Statement") (Claim No. 2, Exhibit 3). Based on the Debtor's valuation of the Receivables/collateral, Kapitus' claim is partially secured and partially unsecured, as set forth in the Plan. For the secured claim portion only, the security interest and liens granted to Kapitus pursuant to a Forward Purchase Agreement, Security Agreement, and Guaranty dated October 21, 2022 as well as all documents referenced in and/or related to the Forward Purchase Agreement, Security Agreement, and Guaranty dated October 21, 2022, (collectively, the "Kapitus Agreement") and perfected pursuant to the Financing Statement are hereby preserved and shall survive the confirmation of the Plan to the same validity, extent, and priority as they existed as of the Petition Date, and Kapitus shall not be required to file, record, or serve any financing statements, mortgages, notice, or other documents that may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such security interest and liens.

All terms of the Kapitus Agreement and not modified by the Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization are

incorporated herein by reference and shall remain in full force and effect and binding upon and enforceable against the Debtor to the fullest extent under applicable law.

Kapitus reserves all of its rights, remedies, claims and causes of action arising out of or relating to the terms of the Guaranty included in and which are a part of the Kapitus Agreement.

All payments by Debtor to Kapitus under the Confirmed Plan of Reorganization in this case shall be remitted to Kapitus by Debtor via monthly ACH payments. The Debtor authorizes Kapitus to ACH debit from the account set forth on the voided check to be provided by Debtor at least five (5) business days in advance of the due date of the first payment due to Kapitus under the Confirmed Plan of Reorganization. If Debtor changes the bank account from which such ACH debits are being remitted, Debtor shall provide Kapitus within five (5) business days of such change, the new bank account information and a written authorization to deduct payments via ACH from such account in accordance with the terms of the Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization. Debtor shall be charged and liable for a fee of $75.00 for any rejected ACH debit incurred by Kapitus Servicing, Inc., and such fees shall be due and payable by Debtor as they accrue.

A failure by the Debtor to make a payment to Kapitus pursuant to the terms of the Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization shall be an Event of Default under the Kapitus Agreement.

If the Debtor fails to cure the Event of Default caused by its failure to make payment to Kapitus pursuant to the terms of the Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization within five (5) business days, which

excludes Saturdays, Sundays, and Federal Holidays, days after Kapitus provides Debtor with a written notice of default or the Debtor otherwise defaults under the Kapitus Agreement, as modified by the Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization, Kapitus may, in its sole discretion: (i)enforce the entire amount of its claim (Claim No. 2); (ii) exercise and enforce any and all rights and remedies Kapitus has under applicable law, the Kapitus Agreement, and/or the terms Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization; (iii) and seek any such relief as may be appropriate in the Bankruptcy Court. Debtor agrees to waive any and all defenses other than that an Event of Default has occurred under applicable law, the Kapitus Agreement, and/or the terms Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization, or to the extent not waived by Debtor, as provided under the terms Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization, that such Event of Default has been cured by the Debtor as provided for in terms Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization.

Notwithstanding anything to the contrary herein, following the effective date of the Confirmed Plan of Reorganization, Debtor shall have the opportunity to cure an Event of Default two (2) times over the life of the Confirmed Plan of Reorganization. Upon the occurrence of a third Event of Default over the life of the Confirmed Plan of Reorganization Kapitus may exercise and enforce any and all rights and remedies regardless of Debtor's purported cure of such Event of Default and, further, Debtor waives the defense that it has cured such Event of Default. In addition, any failure by Kapitus to exercise its rights and remedies upon the occurrence of an Event of Default shall not be deemed a waiver by Kapitus of

its rights and remedies upon the occurrence of a future Event of Default.

Any notices, reports, and other financial information to be provided under the terms Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization be sent by first class mail, overnight courier, or email, to the following:

    **a.**    **If to Kapitus:**

Kapitus Servicing, Inc.
120 West 45th Street, 4th Floor
New York, New York 10036
Attn: General Counsel
Email: generalcounsel@kapitus.com

with a courtesy copy to:

Elizabeth Lally via email to: Elally@spencerfane.com

**If to Debtor:**

MRucker Industries, Inc.
237 Benelli Drive
Hutto, Texas 78634

with a courtesy copy to:

Robert Lane via email to: notifications@lanelaw.com

Debtor represents, acknowledges, and agrees that it neither holds nor possesses any avoidance, preference, fraudulent conveyance or other claims or causes of action against Kapitus and will not prosecute or pursue any such claims.

With respect to Kapitus nothing in the Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization shall limit Kapitus's setoff rights under 11 U.S.C. § 553 or any rights to recoupment. Nothing in the Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization shall be interpreted to enjoin or limit Kapitus from asserting those rights. This provision is not an admission by any party that such setoff or recoupment rights exist.

Should the Debtor file another bankruptcy petition before completing, the Confirmed Plan of Reorganization and any Order confirming the Plan of Reorganization, the Kapitus claim(s) (secured and/or impaired) will have no lower priority in any subsequent bankruptcy than each respective claim does in this case. This treatment of the Kapitus' claim(s) and any order encompassing such treatment shall be binding upon any subsequently appointed Chapter 11 or Chapter 7 Trustee in bankruptcy, and any successors, assigns or other persons claiming by or through the Debtor.

# # #